UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTONIO HILL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-204
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for Child's Insurance Benefits (CIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

**I. Procedural Background**

Plaintiff filed an application for CIB on July 22, 2010, and an application for SSI on July 28, 2010, alleging disability since December 24, 2009,[1] due to attention deficit hyperactivity disorder (ADHD), bipolar disorder, and schizophrenia. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Robert W. Flynn. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On July 17, 2012, the ALJ issued a decision denying plaintiff's CIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff amended his alleged disability onset date to August 31, 2009, at the ALJ hearing. (Tr. 49).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B). To qualify for CIB disability benefits, a claimant who is 18 years or older must establish a disability that began before age 22. 42 U.S.C. § 402(d)(1).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

   1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

   2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

   3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

   4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

   5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. Born [i]n . . . 1989, the [plaintiff] had not attained age 22 as of December 24, 2009, the alleged onset date (20 CFR 404.105, 416.120(c)(4) and 404.350(a)(5)).
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since December 24, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: borderline intellectual functioning, bipolar disorder, major depressive disorder, anxiety disorder, and a history of substance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The [plaintiff]'s work is limited to simple, routine, and repetitive tasks; in a low stress environment defined as free of fast-paced production requirements; involving only simple, work-related decisions; and with few, if any work place changes. Moreover, the [plaintiff] is limited to work with only occasional and superficial interaction with the public, coworkers, and supervisors.

    6. The [plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

    7. The [plaintiff] was born [i]n . . . 1989 and was 20 years old, which is defined as younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

    8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

    10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 24, 2009, through the date of this decision (20 C.F.R. 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Tr. 15-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in finding that plaintiff did not have a qualifying IQ score of 70 or less for purposes of meeting or medically equaling Listing 12.05C; (2) plaintiff's deficits in adaptive functioning are sufficient to establish that he meets or medically equals Listing 12.05C; and (3) plaintiff suffers from severe impairments, other than intellectual disability, which impose additional and significant functional limitations for purposes of meeting or equaling Listing 12.05C. Plaintiff's arguments will be addressed together as they all relate to the ALJ's determination that his mental impairment does not meet or medically equal Listing 12.05C.

Listing 12.05 contains an introductory paragraph with the diagnostic description of "intellectual disability" and four sets of criteria set forth in paragraphs (A)-(D). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. Listing 12.05 provides in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

To meet Listing 12.05 for intellectual disability, the impairment must satisfy both the diagnostic description and any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)). In satisfying the diagnostic description for intellectual disability, a claimant must demonstrate: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) such deficits in adaptive functioning initially manifested before age 22. *Id.* "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). *See also Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009) ("The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of

6

community resources, self-direction, functional academic skills, work, leisure, health, and safety.'") (quoting Diagnostic and Statistical Manual of Mental Disorders, p. 49 (4th ed. 2000)). For purposes of Listing 12.05C, the Social Security regulations direct that the lowest score of an IQ test's multiple components be used: "Where verbal, performance and full scale IQ's are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00 D(6)(c).

Plaintiff contends he meets Listing 12.05C for intellectual disability because he has: (1) qualifying IQ scores; (2) significantly subaverage general intellectual functioning with deficits in adaptive functioning which manifested prior to age 22; and (3) additional functional limitations resulting from other severe impairments. Plaintiff argues that the ALJ's Listing 12.05C finding, which is based on plaintiff's consultative examination with Nancy Schmidtgoessling, Ph.D., lacks substantial support in the record. Plaintiff further argues that the ALJ improperly ignored other qualifying IQ scores in finding that he does not meet the listing. Plaintiff maintains that the evidence of record clearly establishes that he meets Listing 12.05C and the ALJ's decision should therefore be reversed for an award of benefits. (Doc. 6).

The Commissioner concedes that plaintiff suffers from significant work-related functional limitations unrelated to his alleged intellectual disability for purposes of Listing 12.05C. (Doc. 14 at 13). However, the Commissioner contends the ALJ's determination that plaintiff does not meet Listing 12.05C is substantially supported by the evidence of record because there is no qualifying valid IQ score in the record. (*Id*. at 8-12). The Commissioner further contends that plaintiff's minimal adaptive functioning deficits, absent a qualifying IQ score, are insufficient to support a finding that he meets Listing 12.05C. (*Id*. at 12).

With the exception of one IQ test result of 72[2], plaintiff has consistently tested in the IQ range of 50 to 60 from the first grade through 2010, when plaintiff was 20 years old and examined by the consultative examiner in this case. When plaintiff was in the first grade, he was evaluated at the Children's Hospital Diagnostic Center and administered the Wechsler Intelligence Scale for Children – Third Edition (WISC-III). Plaintiff obtained the following IQ scores: verbal 69, performance 73, and full scale 69. Based on these scores and other evidence indicating plaintiff had deficits in adaptive functioning, plaintiff began receiving special education services within the Cognitive Disability (Mental Retardation/Developmentally Handicapped) program. (Tr. 325, 332). Plaintiff was also administered an alternate testing instrument in the first grade which showed a verbal IQ of 74, nonverbal IQ of 74 and total IQ of 72. (Tr. 325). When plaintiff was 11 years old and in the fifth grade, testing revealed a verbal IQ of 51, nonverbal IQ of 63, and total IQ of 50. (*Id.*). Based on these latter two tests, school psychologist Dennisse Carrion, Ed.S., NCSP, assessed that plaintiff's "estimated level of cognitive functioning to be within the deficient range, which is commensurate with the results obtained from the [earlier] WISC-III administration." (*Id.*). At age 13, when plaintiff was in the eighth grade, the school psychologist assessed that plaintiff's "level of intellectual functioning has consistently been measured to be within the deficient range. Current classroom performance continues to indicate delays in his adaptive behavior as well as academic skills." (*Id.*). As a result, plaintiff continued to receive special education services through the Cognitive Disability program. (Tr. 332).

In October 2009, when plaintiff was in the twelfth grade, he was administered the

---

[2]This is the lowest score in a series of IQ scores plaintiff obtained on the Ottis-Lenon School Ability Test when plaintiff was in the first grade. (Tr. 325). *See* 20 C.F.R. Part 404, Subpart P, App. 1, 12.00D(6)(c).

WAIS-IV by his school psychologist.[3] Plaintiff obtained a verbal comprehension index composite score of 76, a perceptual reasoning index composite score of 69, a working memory index composite score of 69, and a processing speed index composite score of 68, resulting in a full scale IQ composite score of 65, placing him in the extremely low intelligence range. The school psychologist noted that there was a 95% confidence interval that plaintiff's full scale IQ fell between 62 and 70 based on this testing. The psychologist further noted that "a statistically significant difference does not occur between [plaintiff]'s verbal and visual-performance cognitive abilities, suggesting that his language based and visual-perceptual reasoning abilities are similarly developed." (Tr. 379).

On September 1, 2010, plaintiff met with consultative examining psychologist Dr. Schmidtgoessling. Dr. Schmidtgoessling and her assistant administered a WAIS-IV IQ test. Plaintiff was noted as being cooperative but occasionally vague and guarded about his history. Dr. Schmidtgoessling found that his effort and persistence were poor and that "[h]is pattern of near misses suggested the possibility of malingering."[4] Plaintiff obtained a verbal comprehension index of 72, a perceptual reasoning index of 65, and a full scale IQ of 56. Dr. Schmidtgoessling determined that these scores were underestimates of plaintiff's ability due to his limited effort and persistence on testing, although she did not quantify the specific amount. (Tr. 388-93). Based on the results of the examination, Dr. Schmidtgoessling was unable to estimate plaintiff's ability to perform basic work activities from a mental standpoint. Dr. Schmidtgoessling stated that plaintiff "appeared to be of borderline intelligence" based on

---

[3] Plaintiff was tested by the school even though he was 20 years old at the time because he was held back in the twelfth grade three times and was still attending high school. See Tr. 68, 389.
[4] Dr. Schmidtgoessling does not explain what she meant by "near misses" and whether this was related to plaintiff's test-taking abilities. Nor does she explain how this suggested the possibility of malingering.

9

conversation. She concluded that plaintiff was not capable of managing funds, making decisions about the future, managing daily living situation, or cooperating with treatment. (Tr. 392).

The ALJ determined that plaintiff did not meet the criteria of Listing 12.05C because he did not present evidence of a valid verbal, performance, or full scale IQ score of 60 through 70. The ALJ acknowledged the low IQ scores reported by Dr. Schmidtgoessling, but concluded that the "scores are exaggerated due to [plaintiff]'s malingering as assessed by Dr. Schmidtgoessling." (Tr. 18).

The ALJ's determination that plaintiff does not meet Listing 12.05C for lack of a qualifying IQ score is not substantially supported by the record. In determining that plaintiff does not have a valid verbal, performance, or full scale IQ of 60 through 70, the ALJ relied solely on Dr. Schmidtgoessling's consultative examination and the IQ scores obtained therein to the exclusion of the other substantial IQ evidence in the record. The ALJ did not address plaintiff's IQ scores obtained in the first, fifth, and twelfth grades, which consistently showed listing level IQ results. Taking the lowest IQ score in the series as directed by the Social Security regulations, plaintiff's IQ was 69 in the first grade; his IQ was 50 in the fifth grade; and his IQ was 65 in the twelfth grade, all of which are within the 60 to 70 range (or below) as required by Listing 12.05C. Notably, all of the school IQ testing was performed before plaintiff applied for disability benefits, strongly suggesting there was no financial incentive to "fake" or minimize his level of intellectual functioning. Thus, even if the ALJ was entitled to reject the 2010 IQ results given Dr. Schmidtgoessling's determination that the scores underestimated plaintiff's abilities

due to limited effort and persistence on testing[5], the ALJ was not free to then ignore all of the other IQ tests and supporting evidence in the record which showed qualifying IQ scores of 60 to 70. *See Lingo v. Colvin*, No. 3:13-cv-452, 2013 WL 6859870, at *4 (N.D. Ohio Dec. 29, 2013) ("focusing on the non-qualifying IQ score to the exclusion of other evidence that may be relevant to the age-of-onset requirement is inconsistent with the substantial evidence standard"). *See also Boyd v. Astrue*, No. 09-4619, 2011 WL 1004562, at *4 (E.D. Pa. Mar. 18, 2011) ("The ALJ, on remand, should consider all evidence, including all three I.Q. tests on record and Boyd's school records, to make a factual finding as to whether Boyd's mental condition equals Listing 12.05(C).").

Nevertheless, the Commissioner asserts that none of the previous IQ scores satisfy Listing 12.05C because: (1) they were not administered by an acceptable medical source, and (2) they were not declared valid by the tester. (Doc. 14 at 11).

The 2009 IQ scores plaintiff obtained in the twelfth grade resulted from testing administered by plaintiff's school psychologist, Patrick J. Torosian. *See* Tr. 379. As noted by plaintiff, *see* Doc. 15 at 2, under the applicable Social Security regulation, school psychologists are considered acceptable medical sources for purposes of establishing intellectual disability. *See* 20 C.F.R. § 404.1513(a)(2). Likewise, plaintiff's IQ scores from the first and fifth grades were endorsed by school psychologist Carrion and, along with plaintiff's deficits in adaptive functioning, formed the basis for plaintiff's receipt of special education services throughout grade school, middle school and high school. Therefore, the Commissioner's argument for disregarding the previous listing level IQ scores is not well-taken.

---

[5]*See, e.g., Shepherd v. Sullivan*, 889 F.2d 1088, 1989 WL 142067 (6th Cir. Nov. 27, 1999) (table) (upholding ALJ's rejection of IQ score where test administrator found that the plaintiff showed signs of

11

In addition, the Commissioner's contention that the regulations require that a tester render an opinion as to the validity of an IQ score for purposes of meeting Listing 12.05C is inaccurate. The regulations provide:

> The results of standardized intelligence tests may provide data that help verify the presence of intellectual disability . . . as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results *should* comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(D)(6)(a) (emphasis added). This regulation does not compel the conclusion that an IQ score is invalid absent the tester's specific finding of validity, as the Commissioner contends, but simply that such an opinion is helpful in verifying the presence of intellectual disability. In any event, review of Mr. Torosian's report establishes that he deemed the test to be valid, and plaintiff's school records establish that the scores are consistent with plaintiff's developmental history and degree of functional limitation.

Mr. Torosian reported there was a 95% confidence level that plaintiff's full scale IQ score of 65 fell within the interval of 62-70, which is in Listing 12.05C's range of qualifying scores. (Tr. 379). *See also Gomez v. Astrue*, 695 F. Supp.2d 1049, 1054 n.3 (C.D. Cal. 2010) (explaining significance of a confidence interval for purposes of interpreting IQ scores) ("A 90% confidence interval means that the investigator is 90% confident that the true estimate lies within the confidence interval."). Mr. Torosian also found no statistically significant difference in plaintiff's verbal and visual-performance cognitive abilities, which suggested that his language based and visual-perceptual reasoning abilities are similarly developed. (Tr. 379).

In addition, school records, including those from plaintiff's individualized education

---

malingering).

program, establish that these test results are consistent with his developmental history and functional limitations. *See, e.g.*, Tr. 48, 68, 389 (plaintiff testified and reported to Dr. Schmidtgoessling that he did not graduate high school and was held back in the twelfth grade three times); Tr. 325 (plaintiff's first grade and fifth grade IQ scores are consistent with those found in twelfth grade and on testing by Dr. Schmidtgoessling); Tr. 326 (on achievement testing at age 13, plaintiff was performing at a second grade level in English, a first grade level in math computation, and a kindergarten level on math comprehension, though these scores were not reflective of his classroom ability); Tr. 331 (school officials determined that plaintiff's level of intellectual functioning at age 13 was within the deficient range and that his level of functioning would impact most or all areas of achievement and adaptive behavior and require extensive curriculum modification); Tr. 383 (in 2009, plaintiff "continue[d] to demonstrate significantly subaverage general intellectual functioning concurrent with academic and adaptive behavior deficits"); Tr. 259-60, 400 (over 75% of plaintiff's grades in high school were Ds and Fs).

The Commissioner also contends the ALJ's listing finding is substantially supported because "no doctor or other source ever diagnosed mental retardation or intellectual disability" and "Dr. Schmidtgoessling diagnosed borderline intellectual functioning." (Doc. 14 at 12). "There is no authority for the proposition that [a claimant] must be able to point to a *diagnosis* of mental retardation in order to satisfy [listing 12.05]." *Lingo*, 2013 WL 6859870, at *5 (quoting *Thomas v. Comm'r of Soc. Sec.*, No. 08-cv-1365, 2010 WL 1254788, *11 (N.D. Ohio Mar. 25, 2010)). Whether plaintiff was diagnosed with mental retardation is not dispositive of whether he meets Listing 12.05C. *See Breitenstein v. Astrue*, No. 3:10-cv-32, 2011 WL 1235018, at *12 (S.D. Ohio Jan. 6, 2011) (Report and Recommendation), *adopted*, 2011 WL 1234902 (S.D. Ohio

13

March 30, 2011) ("[I]nstead of requiring evidence of a diagnosis of mental retardation, the correct analysis focuses on whether the evidence of record meets or equals Listing 12.05's introductory paragraph and Listing 12.05C's criteria."); *Wilkerson v. Comm'r of Soc. Sec.*, No. 3:08-cv-419, 2010 WL 817307, at *13 (S.D. Ohio March 5, 2010) ("Requiring such a diagnosis in cases of mental retardation would place formalism over substantive evidence."). While a diagnosis of mental retardation may be useful evidence in assessing intellectual functioning, a formal medical diagnosis is not conclusive one way or the other. *Cf. Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("[T]he mere diagnosis of [an impairment], of course, says nothing about the severity of the condition."). *See also Rhoads v. Comm'r of Soc. Sec.*, No. 2:14-cv-318, 2014 WL 4626293, at *4 (S.D. Ohio Sept. 15, 2014) (Report and Recommendation), *adopted*, 2014 WL 5469879 (S.D. Ohio Oct 28, 2014). "Listing 12.05C *defines* mental retardation; it does not require a claimant to prove mental retardation *in addition* to satisfying that definition." *Lingo*, 2013 WL 6859870, at *5 (quoting *McClellan v. Astrue*, 804 F. Supp.2d 678, 692 (E.D. Tenn. 2011) (emphasis in original)). Therefore, whether or not plaintiff has been diagnosed with mental retardation or borderline intellectual functioning is not determinative of whether he meets Listing 12.05C.

Finally, the Commissioner contends that plaintiff's unspecified "minimal deficits" in adaptive functioning are insufficient to satisfy the requirements of the listing. However, the Commissioner neither provides an explanation of this argument nor cites to supporting authority. (Doc. 14 at 13). To the extent the Commissioner suggests that plaintiff must show "significant" or "marked" deficits in adaptive functioning, the plain language of Listing 12.05C – which

14

requires "deficits in adaptive functioning" – does not specify how severe the deficits must be.[6] Under the Social Security regulations, "loss of adaptive functioning" is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00 C4. In this case, the ALJ determined that plaintiff, who had not attained the age of 22 as of the alleged onset date, has moderate difficulties in social functioning and in concentration, persistence and pace (Tr. 17) and lacks "independent living skills." (Tr. 24). Although the ALJ determined that these moderate limitations did not preclude work that was simple, routine and repetitive or that required occasional and superficial interaction with the public or co-workers, such abilities are not necessarily inconsistent with Listing 12.05C. *See Brown v. Sec. of HHS,* 948 F.2d 268, 270 (6th Cir. 1991) (full scale IQ of 68 not inconsistent with obtaining driver's license and work history as a truck driver, limited literacy and sixth grade education, and ability to make change, do laundry and clean his room); *Wilson v. Astrue,* No. 07-439, 2009 WL 69237, at *5 (E.D. Ky. Jan. 9, 2009) (claimant's ability to sustain concentration and interact with others not inconsistent with listing 12.05C); *Muntzert v. Astrue,* 502 F. Supp.2d 1148, 1157-58 (D. Kan. 2007) ("DSM-IV and Listing 12.05(C) assume many, if not most, mildly mentally retarded individuals will be able to work. However, they recognize that some mildly mentally retarded individuals may be unable to work where they have 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'"). *See also Grenham v. Astrue,* No. 08-cv-11151, 2009 WL 1209026, at *5 (D. Mass. May 4, 2009) ("the

---

[6] Indeed, if the diagnostic description for Listing 12.05 requires more than moderate deficits of adaptive functioning as the Commissioner suggests, Listing 12.05D – which requires an IQ of 60 through 70 and marked restrictions in at least two areas of mental functioning – would be rendered superfluous.

15

Listings reflect this reality [that a person with mild mental retardation may be able to work and maintain a household], as they require a claimant to demonstrate another impairment apart from mild mental retardation before they can be found disabled") (citing *Nieves v. Sec'y of HHS*, 775 F.2d 12, 14 (1st Cir. 1985)).

More importantly, the ALJ never made a finding that plaintiff failed to manifest the requisite deficits in adaptive functioning before age 22 in determining that plaintiff did not meet or equal Listing 12.05C. (Tr. 18). School psychologist Carrion noted that when plaintiff was in the first grade testing indicated he functioned within the Intellectually Deficient range while his academic and adaptive behavior evaluations indicated Below Average to Borderline functioning. (Tr. 325). However, plaintiff's subsequent school records and reports show his intellectual functioning was consistently measured in the deficient range and his classroom performance demonstrated continued delays in adaptive behavior and academic skills. (Tr. 325-329, 331). Psychologist Carrion noted that in the eighth grade plaintiff's "[c]urrent classroom performance continues to indicate delays in his adaptive behavior as well as academic skills." (*Id.*). By the twelfth grade, school records state that plaintiff "continues to demonstrate significantly subaverage general intellectual functioning concurrent with academic and adaptive behavior deficits." (Tr. 383). *See also* Tr. 332 (plaintiff's "evaluation indicates subaverage general intellectual functioning, deficits in at least two adaptive behavior areas and deficits in academic performance"); Tr. 333 (reading on a "low third grade instructional level" in twelfth grade).[7]

---

[7] The ALJ appears to discount plaintiff's school records in his discussion of Listing 12.05B (which is not at issue in this appeal) by opining that plaintiff's poor school performance was due to his unstable living arrangements. (Tr. 18). The school record to which the ALJ refers, however, ascribes plaintiff's academic deficits to plaintiff's "living situation *and functional* levels." (Tr. 382) (emphasis added). The ALJ's limited and selective citation to plaintiff's school records fails to accurately portray plaintiff's limitations in functioning.

16

Even Dr. Schmidtgoessling opined that plaintiff was not capable of managing funds, making decisions about the future, managing his daily living situation, or cooperating with treatment. (Tr. 392). This evidence strongly suggests that plaintiff demonstrates the requisite adaptive-skills limitations for Listing 12.05C.

Accordingly, the ALJ erred by relying solely on Dr. Schmidtgoessling's report, to the exclusion of the other substantial evidence of record, to find plaintiff's IQ scores did not meet the criteria for Listing 12.05C. For these reasons, the Court finds that the ALJ's determination that plaintiff did not meet Listing 12.05C is not supported by substantial evidence. Accordingly, plaintiff's assignment of error should be sustained.

### III. This matter should be reversed for an award of benefits.

When the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec. of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec. of H.H.S.*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v.*

*Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

Here, proof of disability is overwhelming and remand will serve no purpose other than delay. As discussed above, the record evidence establishes that plaintiff meets the criteria of Listing 12.05C. Specifically, plaintiff's October 2009 full scale IQ score of 65 satisfies the listing's criteria and is consistent with the IQ scores plaintiff obtained throughout his developmental years. The record also shows deficits in adaptive functioning that manifested before the age of 22 in accordance with the introductory paragraph of the listing. Finally, the ALJ determined that in addition to his intellectual impairment, plaintiff suffers from the severe impairments of bipolar disorder, major depressive disorder, and anxiety disorder, all of which impose additional work-related functional limitations for purposes of Listing 12.05C. The proof of disability is strong and the evidence to the contrary is lacking in substance. Therefore, this matter should be reversed and remanded for an award of benefits.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion for an award of benefits.

Date: 1/6/2015

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTONIO HILL,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-204
Barrett, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).